UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:05-CR-14 |
| | ) | VARLAN |
| GERALD DAVID WEBBER, JR. | ) | |

**RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

The United States of America, by and through the United States Attorney for the Eastern District of Tennessee, hereby files this response to defendant's <u>Sentencing Memorandum</u> [Doc.13] and submits the following:

Defendant Webber has filed a Sentencing Memorandum asking for a sentence below the calculated guideline range of 70-87 months[1]. In support of his motion, he argues that the sentencing guidelines have been erroneously calculated and that the Court should sentence him to 10-16 months. He also cites several factors that, in his opinion, take this case out of the "heartland" of cases and suggests that the Court depart downward. It is the position of the United States that defendant's requests are inconsistent with the law, the United States Sentencing Guidelines, the facts of this case, and the factors set forth in 18 U.S.C. 3553.

**The Facts**

On July 8, 2004 five Campbell County Sheriff's Office deputies traveled to the residence of Lester Eugene Siler in the White Oak community of Campbell County, Tennessee. Their mission

---

[1] As the Court is aware, the United States has filed, under seal, a <u>Motion for Downward Departure</u> recommending a sentence of 60 months imprisonment. This recommendation is more than generous in light of the defendant's limited cooperation.

was to locate and arrest Siler on a warrant charging him with violating his probation. Siler was at home with his wife Jenny and their eight-year old son. The deputies told Jenny Siler to take the boy and leave. Jenny complied, but not before secretly activating a mini-cassette recorder in the couple's kitchen.

Eugene Siler, a 42 year old white man, has a reputation for dealing drugs in the White Oak community. He has a series of arrests and convictions for drug offenses. He was on probation following convictions in July 2003 for the sale of Schedule II, III, and IV Controlled Substances. His probation officer, in an affidavit to support the warrant for his arrest, alleged that Siler had failed to submit to a drug screen in November 2003, had missed multiple appointments, and had tested positive for marijuana and hydrocodone in December 2003. The deputies intended to search his home for drugs and wanted him to sign a consent to search form. When he refused, they spent the better part of the next two hours threatening and physically abusing him in an attempt to force him to sign. He still refused. The deputies then arrested both Jenny and Eugene Siler, transported them to the Campbell County Jail, and charged them with various drug offenses. In addition, Eugene Siler was charged with resisting arrest and Jenny Siler was charged with interfering with his arrest. All criminal charges against the two have since been dismissed. Pill bottles containing Oxycontin and Valium were found outside the trailer, as well as a small amount of marijuana and rolling papers in Eugene Siler's pocket.

While at the jail, Eugene Siler complained to another inmate that he was in pain and that the deputies had beaten him up. This inmate contacted an attorney who, in turn, contacted the Tennessee Bureau of Investigation ("TBI"). TBI interviewed the five sheriff's deputies, all of whom

2

denied knowledge of or participation in any wrongdoing. Upon being informed that there was a tape recording and listening to excerpts of that tape, four of the five gave partial confessions.

On the tape[2], the deputies can clearly be heard threatening Eugene Siler with physical harm if he does not comply with their repeated demands to sign a consent to search form. The threats are immediate and graphic. Almost as soon as Mrs. Siler and her son leave the trailer, one deputy says to Eugene Siler that if he does not cooperate, "I'm gonna take this slapjack and I'm gonna start working that head over. You understand?" Siler, who is mumbling, apparently refuses. The deputy then says, "Look, you sign this **[expletive deleted]** or I'm gonna hit you again." Noises that sound like blows are audible, as well as Siler screaming, whimpering and begging. At various points, Siler is threatened with being beaten, being slapped until he bleeds, having the hell knocked out of him, having wires hooked up to his testicles, being "juiced," being killed, being shot, having his "**[expletive deleted]**" kicked, having his nose racked, being burned with a lighter, having his fingers broken, and having a bullet in his head. The deputies tell him that he won't walk out of there alive, that they don't care if he dies, that he is going to die, and that they are going to plant a BB gun because it looks like a real gun to them. They tell him that their "story" will be that when they arrived, he ran out the back door and they had to chase him and that he fought with them. Deputy Monday eventually unholsters his sidearm and threatens to blow Siler's brains out. Siler is handcuffed although at times the deputies release his hands in an effort to make him sign the consent form.

---

[2]The tape and a transcript of it have previously been filed with the Court as Document 14. Both were provided to the defendant long ago.

3

Webber was the second most senior officer present in the Siler home that day and was the lead investigator on this arrest. It is clear from the tape that Webber takes a controlling position in the abuse. His voice is heard throughout the entire tape and it is he who calmly and repeatedly orders Siler to sign the consent to search form while others administer physical abuse. It is a shameful and repugnant abuse of power.

When confronted by the TBI with these allegations Webber gave a sworn statement lying about his involvement and that of the others to protect himself and his colleagues. (Statement is attached as Exhibit A).

## The United States Sentencing Guidelines

An individual convicted of violating 18 U.S.C. § 241 is subjected to a maximum term of imprisonment of ten years. The U.S.S.G. take into account numerous factors relating to the crime and the individual who committed it before resulting in a final advisory guideline range.

Appendix A of the U.S.S.G. directs the reader to three guidelines associated with a violation of 18 U.S.C. § 241. Of these three, U.S.S.G. § 2H1.1 is clearly the most analogous. U.S.S.G. § 2H1.1(a)(1) directs the Court to apply the guideline applicable to any underlying offense if it is higher than the subsequent base offense levels listed. This is true in this case and the United States Probation Office correctly began its calculations using U.S.S.G. § 2A2.2.

U.S.S.G. § 2A2.2 calls for a base level of 14 with specific offense characteristics that apply an increase of three levels for brandishment of the firearm by Monday during the course of the

4

conspiracy and an increase of three levels for inflicting bodily injury upon Mr. Siler. This results in a base offense level of 20.³

After this calculation is completed, the Court returns to § 2H1.1(b)(1)(B) and should apply the enhancement of six levels for the fact that this offense was committed under color of law. This clearly applies in this case. All five deputies who participated in this conspiracy were sworn law enforcement officers in Campbell County, Tennessee, were working in the context of their employment and held themselves out to be sworn deputies when they committed this crime.

Next, the Court should apply a two-level enhancement under U.S.S.G. § 3A1.3 because Mr. Siler was restrained while he was tortured, both physically and mentally, for the better part of two hours. The defendant concedes this adjustment should apply.

The final calculation the Court should take into consideration before reaching the defendant's adjusted offense level is that for obstruction of justice. The defendant gave a voluntary sworn statement under oath on July 19, 2004, in which he denied any of the abuse and stated that "We used the proper amount of force to effect the arrest and made no threats of any kind to Eugene or his family." This is a lie. U.S.S.G. § 3C1.1 clearly calls for this enhancement for an individual who commits, suborns, or attempts to suborn perjury. No one forced the defendant to lie and he did so in an attempt to protect his own interests. This enhancement clearly applies.

Lastly, the defendant should receive an adjustment for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b). The United States filed a motion pursuant to § 3E1.1(b) requesting that the extra point for the acceptance of responsibility apply to the defendant because of his early

---

³The United States Probation Office could easily have found enhancements under § 2A2.2(b)(1) and (b)(2)(B) which would have resulted in a base offense level of 23 instead of 20. There is more than enough evidence to support both of these increases.

5

agreement to enter a guilty plea. This results in a total reduction of three levels, a Total Offense Level of 27, and sentencing guideline range of 70 to 87 months. The defendant states in his sentencing memorandum that he should receive four levels for acceptance of responsibility. The United States is unaware of any guideline provision that calls for this and the defendant supplies none.

The sentencing guidelines have been correctly calculated in this case, and in fact, appear to have given the defendant the benefit of the doubt on some issues that could have easily resulted in a sentencing range higher than the one he is currently facing.

### Other Factors

Lastly, the defendant relies on several other factors that he claims support a lower sentence. These factors range from his lack of criminal history to the loss of his marriage and the fact that he will have a been incarcerated a little over four months at the time of his sentencing. All of these factors are adequately addressed by the United States Sentencing Guidelines and the defendant has been unable to show why even one of these factors should result in a lower sentence.

The facts of that day clearly bear out that the defendant was one of two senior law enforcement officers present and it was he who was largely in control of the situation. It was his arrest and it was he that directed the interrogation. That isn't to say that the others aren't as responsible or culpable as the defendant, however, he is the reason that five deputies were present in the Siler home that day.

A term of imprisonment of less than 60 months risks depreciating the seriousness of the crime he committed. Also, a lengthy term of imprisonment is necessary to deter him and others like

6

him from committing these crimes in the future. A term of imprisonment of 10-16 months, as suggested by the defendant, is patently unreasonable.

Respectfully submitted this 6th day of July, 2005.

                HARRY S. MATTICE, JR.
                UNITED STATES ATTORNEY

By:   /s/ Charles E. Atchley, Jr.
       CHARLES E. ATCHLEY, JR.
       Assistant United States Attorney
       B.P.R. # 016414
       800 Market Street, Ste. 211
       Knoxville, Tennessee 37902
       (865) 545-4167

7

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2005, a copy of the foregoing Response was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Opposing counsel may access this filing through the Court's electronic filing system. Any counsel not named as being served electronically will be served by regular U.S. mail or facsimile.

>Wesley L. Asbury
>Attorney at Law
>Post Office Drawer 66
>Jacksboro, Tennessee 37757
>
>Myra Melton
>U.S. Probation Office
>800 Market Street, Suite 311
>Knoxville, Tennessee 37902

>/s/ Charles E. Atchley, Jr.
>CHARLES E. ATCHLEY, JR.
>Assistant United States Attorney

8