# Tennessee Bureau of Investigation
# Investigative Report

**Case #:** KX-82A-000029
**I.R. #:** 5
**Description:** Interview - Sworn Statement - David Webber, Jr. - 07/19/04
**Office of Origin:** Knoxville
**Case Agent:** Morrell, Rick L
**SAC/ASAC:** Denney, Robert

## Narrative

(V) Lester Eugene Siler (W/M - ▉)
(V) Jenny Lynn Siler (W/F - ▉)
(S) Gerald David Webber, Jr. (W/M - ▉)
(S) Joshua James Monday (W/M - ▉)
(S) Samuel Reed Franklin (W/M - ▉)
(S) Shane Christopher Green (W/M - ▉)
(S) William Paul Carroll (W/M - ▉)

Statement of: David Webber Jr. on 07-19-04, 11:20 am

I David Webber, Jr. am a narcotics detective with the Campbell County Sheriff's Department. I have been with the department approximately 9 years.

I have worked previous drug cases on Lester Eugene Siler as he has an extensive record. I personally know of at least 10 felonies.

The sheriff's department had an arrest warrant for Eugene Siler out of criminal court for probation violation. Eugene had not been reporting according to Mandy Palmitter his probation officer. Eugene is known to always be holding dope and he always runs when you go to arrest him. I took enough help in case Eugene ran. The officers that went with me were Sammy Franklin, Will Carroll, a reserve officer, Josh Monday, and Shane Green. At approx 1:30 or 2:00 pm on July 8, 2004 we went to Eugene's residence located at ▉ ▉, Lafollette, TN. Eugene, his wife Jenny Siler and their son were at the residence. We knocked on the door an no one would come to the door. Jenny finally came to the door. I could hear someone moving around inside and heard the back door. Me and Sammy were at the front door, and Josh, Shane, and Will went to the back door. Eugene bailed out the back door which is about a 5 foot drop as there is no porch. Josh, Will or Shane had caught Eugene when he ran and Eugene was on the ground. Eugene was still resisting arrest when I came around the corner. Sammy stayed in front of the house. I helped get Eugene handcuffed and we got him up and took Eugene back in the house and set Eugene down at the kitchen table.

Eugene's wife and son were still there and the son was real upset about arresting his dad. I asked Jenney to take the boy over to the store and want to get the boy away from the situation. Jenny took the boy over to the store.

One of the officers had a consent to search form and I sat down to talk to Eugene and asked Eugene to consent to a search for drugs. Eugene wanted to sign but wanted to talk to his wife as Eugene says he can't read. Jenny came back as one of the officers went and got her and we explained the search waiver to her. The end result was that we did not get either Eugene or Jenny to sign the search waiver.

During that time before we got ready to leave, Jenny called someone to pick up the boy and we arrested Eugene and Jenny. Somebody came and got the little boy and while waiting we called for a transport unit. I can't think of the boy's name who transported. We secured the residence as best we could and we left. We were at Eugene's house approximately an hour and a half to two hours.

We did recover drugs as Eugene had the drugs in unmarked pill bottles, some marijuana and rolling papers. The pills were on the ground where he was laying and the marijuana and papers were in Eugene's pants pocket.

I do not think anyone hit Eugene with anything we wrestled him until he gave up his other hand to be handcuffed. Eugene has told we beat him up and I think Eugene told Sheriff McClellan that we beat him up and hooked him up to jumper cables. We did beat or use excessive force on Eugene Siler, his wife Jenny, or their son.

At no time did we hit Eugene with a flashlight, hooked him up to jumper cables or battery charger.

We used the proper amount of force to effect the arrest and made no threats of any kind to Eugene or his family.


Descriptive Data:

Gerald David Webber, Jr.
W/M

Lake City, TN


RM:knh

Attachment: Sworn Statement-David Webber, Jr.

This confidential document is the property of TBI.
Its contents are not to be distributed outside of your agency.

APPROVED: _____
DATE: _____

# TENNESSEE BUREAU OF INVESTIGATION
## Nashville, Tennessee

## SWORN STATEMENT

Do you, **Gerald David Webber Jr.**, solemnly swear that the statement you are about to give is the truth, the whole truth, and nothing but the truth, so help you God?

ANSWER: **I do**     SIGNATURE: x _David Webby_

This is a sworn statement of (NAME) **Gerald David Webber Jr.**,
(SEX) **M**, (RACE) **W**, (AGE) **39**, (DOB) ████████,
(ADDRESS) ████████ **Lake City, Tn.**,
as given to Special Agent **Rick Morrell and Steve Vincent**,
of the Tennessee Bureau of Investigation (TBI) on **Monday 07-19-04**,
at **11:20** (AM) PM, at the location of **Drug Task Force Building, Caryville, Tenn**

This sworn statement and oath taken under the authority of Tennessee Code Annotated 38-6-102.

_R. Morrell_
Signature of Special Agent

_Steve Vincent_
WITNESS

_____
WITNESS

To be accompanied by Affidavit     Page # **1** of **5** Pages

File: _____     Serial: _____

BI-0059 (Rev. 12-89)

CASE # **KX-82A-000029**

RI #3 (IR#5)

Statement of: David Webber Jr. on 07-19-04, 11:20 AM

(DW) I David Webber, JR am a Narcotics detective with the Campbell County Sheriff's Department. I have been with the department approximately 9 years.

I have worked previous drug cases on Lester Eugene Siler as he has an extensive record. I personally know of at least 10 felonies.

The sheriff's department had an arrest warrant for Eugene Siler out of criminal court for probation violation. Eugene had not been reporting according to Mindy Palmitter his probation officer. Eugene is known to always be holding dope and he always runs when you go to arrest him. I took enough help in case Eugene ran. The officers that went with me were Sammy Franklin, Will Carroll, a reserve officer, Josh Monday, and Shayne Green.

At approx 1:30 or 2:00 pm on July 8, 2004 we went to Eugene's residence located at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Lafollette, Tn. Eugene, his wife Jenny Siler and their son were at the residence. We knocked on the door and no one would come to the door. Jenny finally came to the door. I could hear someone moving around inside and heard the back door. Me and Sammy were at the front door, and Josh, Shayne, and Will went to the back door. Eugene bailed out the back door which is about a 5 foot drop as there is no porch. Josh, Will or Shayne had caught Eugene when he ran and Eugene was on the ground. Eugene was still resisting arrest when I came around the corner. Sammy stayed in front of the house. I helped get Eugene handcuffed and we got him

up and took Eugene back in the house and set Eugene down at the kitchen table.

Eugene's wife and son were still there and the son was real upset about arresting his dad. I asked Jenny to take the boy over to the store and went to get the boy away from the situation. Jenny took the boy over to the store.

One of the officers had a consent to search form and I sat down to talk to Eugene and asked Eugene to consent to a search for drugs. Eugene wanted to sign but wanted to talk to his wife as Eugene says he can't read. Jenny came back as one of the officers went and got her and we explained the search waiver to her. The end result was that we did not get either Eugene or Jenny to sign the search waiver.

During that time before we got ready to leave, Jenny called someone to pick up the boy and we arrested Eugene and Jenny. Somebody came and got the little boy and while waiting we called for a transport unit. I can't think of the boy's name who transported. We secured the residence as best we could and we left. We were at Eugene's house approximately an hour and a half to two hours.

We did recover drugs as Eugene had the drugs in unmarked pill bottles, some marijuana and rolling papers. The pills were on the ground where he was laying and the marijuana and papers were in Eugene's pants pocket.

I do not think anyone hit Eugene with anything we wrestled him until he gave up his other hand to be handcuffed.

Eugene has told we beat him up and I think Eugene told Sheriff McClelland that we beat him up and hooked him up to jumper cables. We did beat or use excessive force on Eugene Siler, his wife Jenny, or their son.

At no time did we hit Eugene with a flashlight. We hooked him up to jumper cables or battery charger.

We used the proper amount of force to effect the arrest and made no threats of any kind to Eugene or his family.



# TENNESSEE BUREAU OF INVESTIGATION
## Nashville, Tennessee

## AFFIDAVIT

I, __Gerald David Webber Jr__, have read, or have had read to me, this sworn statement which begins on Page one (1) and ends on Page __#5__
I fully understand the contents of the entire statement made by me. The statement is true. I have initialed all corrections and have initialed the bottom of each page containing the statement.

I have made this statement freely without hope of benefit or reward, without threat of punishment, and without coercion, unlawful influence, or unlawful inducement.

At the time of the making of this statement, I am not under the influence of alcohol, drugs, or any other type of intoxicant which would render me incapable of understanding the statement made by me.

SIGNATURE: X _[signature]_

This statement sworn and subscribed before me this the __19th__ day of __July__, __2004__

_R. Morrell_
Special Agent
TBI

Statement ending: DATE: __07-19-04__
TIME- __12:07__ ☐ AM ☑ PM
WITNESS: _[signature]_

WITNESS: _____

Attach to back of sworn statement        Page # __5__ of __5__ page

0060